**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MAURA JOAN WINKLER**
**and FIKA MIDWIFERY, PLLC,**

**Plaintiffs,**

**vs.** **1:25-CV-1582 (MAD/DJS)**

**BETTY A. ROSA**
**and DENNIS SPILLANE,**

**Defendants.**

---

**APPEARANCES:** **OF COUNSEL:**

**RUPP PFALZGRAF LLC** **AARON W. KNIGHTS, ESQ.**
1600 Liberty Building **JACOB J. HONAN, ESQ.**
424 Main Street
Buffalo, New York 14202
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL** **BRIAN P. HENCHY, AAG**
The Capitol
Albany, New York 12224
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Maura Joan Winkler and Fika Midwifery, PLLC ("Fika") (collectively, "Plaintiffs") commenced this action on November 10, 2025, against Betty A. Rosa in her official capacity as Commissioner of the New York State Education Department ("NYSED") and Dennis Spillane in his official capacity as NYSED's Executive Director of the Office of Professional Discipline (the "OPD") (collectively, "Defendants"). *See* Dkt. No. 1. The original complaint alleged violations

of procedural and substantive due process stemming from administrative disciplinary proceedings. *See id.* In addition to monetary damages, the original complaint requested a declaratory judgment that Defendants violated Plaintiffs' constitutional rights. *See id.* at 21. Defendants filed a motion to dismiss the complaint on January 23, 2026, asserting that the *Younger* abstention doctrine bars Plaintiffs' claims. *See* Dkt. No. 13.

On March 23, 2026, Plaintiffs opposed Defendants' motion and cross-moved for leave to amend their complaint. *See* Dkt. No. 19. Their proposed amended pleading clarifies that both Defendants are also sued in their individual capacities, states that Plaintiffs do not seek to interfere with an ongoing state proceeding, and eliminates their request for a declaratory judgment. *See* Dkt. No. 19-4. The proposed amended complaint enumerates two claims pursuant to 42 U.S.C. § 1983 against each Defendant: (1) violation of procedural due process; and (2) violation of substantive due process. *See id.* at ¶¶ 104-26. Defendants filed a brief in further support of their motion and in opposition to Plaintiffs' cross-motion on April 13, 2026. *See* Dkt. No. 22. With the Court's leave, Plaintiffs filed a sur-reply on April 28, 2026. *See* Dkt. No. 25.

Defendants' motion to dismiss and Plaintiffs' cross-motion for leave to amend are now before the Court. For the following reasons, Defendants' motion is granted and Plaintiffs' motion is denied.

## II. BACKGROUND

The following factual summary is derived from Plaintiffs' proposed amended complaint.

Plaintiff Winkler is a licensed certified nurse midwife and owner of Fika. *See* Dkt. No. 19-4 at ¶¶ 12-14. She alleges that she obtained her midwifery license "through extensive education, training, and examination[.]" *Id.* at ¶ 18. According to the proposed amended complaint, Plaintiff Winkler has "a protected property interest" in her midwifery license and

"substantial property interests in Fika and the Coit House birth center, which she owns and operates[,]" that are "entirely dependent on her professional license." *Id.* at ¶¶ 18-19.

In July 2023, the OPD "served two Statements of Charges against Plaintiffs," alleging professional misconduct against them both. *Id.* at ¶¶ 20-22. The charges concerned patient care between 2018 and 2022. *See id.* at ¶¶ 21-22. Plaintiffs allege that "the investigations leading to these charges were not guided by a State Board of Midwifery member with training and experience in community midwifery," as is required under state law. *Id.* at ¶ 24. They also allege that during the relevant time period, the State Board of Midwifery did not have the number of members required under state law. *See id.* at ¶ 25. According to Plaintiffs, New York State has a "long-standing institutional bias against community midwifery[,]" which "permeates NYSED and OPD's approach to regulating midwives who dare to offer families alternatives to hospital-based birth." *Id.* at ¶ 93.

"In November 2023, Plaintiffs filed an Article 78 petition challenging OPD's authority to bring disciplinary charges . . . ." *Id.* at ¶ 26. They argued "that OPD had failed to comply with the mandatory requirements of [New York] Education Law § 6510(1)(b), including the requirement to consult with professional board members before commencing proceedings." *Id.* The petition also challenged the timeliness of the disciplinary action and the composition of the State Board of Midwifery. *See id.* On appeal, the New York Appellate Division, Third Department, deemed the challenge premature. *See id.* According to the proposed amended complaint, the Third Department recognized "that Plaintiffs' arguments would be 'a more proper challenge on a developed record after the conclusion of the hearing process and within the context of a CPLR article 78 proceeding.'" *Id.* at ¶ 67 (emphasis removed).

From June 2024 to June 2025, Plaintiffs were the subjects of fifteen disciplinary hearings presided over by Administrative Law Officer Wendy DeForge. *See id.* at ¶¶ 27-28. Plaintiffs allege that DeForge demonstrated bias during the hearings, such as by "including prejudicial evidentiary rulings that consistently favored OPD while restricting Plaintiffs' ability to present their defense." *Id.* at ¶¶ 28-30. They also claim that DeForge "repeatedly blocked legitimate questions about OPD's investigative process[.]" *Id.* at ¶ 31. As a result, "Plaintiffs were precluded from fully exploring whether OPD followed the procedures set forth in NYS Education Law § 6510 in bringing charges during the disciplinary hearing." *Id.* at ¶ 33. Furthermore, Plaintiffs allege that DeForge "engaged in improper ex parte communications with the hearing panel throughout the proceedings, referring to them as her 'clients' without any statutory basis to back up that claim, and claiming privilege for their discussions." *Id.* at ¶ 35. They also allege that she improperly denied their motion for judgment as a matter of law on December 17, 2024. *See id.* at ¶ 37.

Due to DeForge's alleged misconduct, Plaintiffs filed a motion to disqualify her on May 30, 2025. *See id.* at ¶ 39. They assert that no meaningful review occurred because the disqualification motion, which was filed on a Friday evening, was denied the following Monday morning. *See id.* at ¶¶ 42-43. When Plaintiffs questioned the quick denial, they allege they were told to raise the disqualification issue on the record for DeForge to rule upon herself. *See id.* at ¶¶ 44-45. Plaintiffs allege that this direction violated the New York State Administrative Procedure Act ("SAPA"). *See id.* at ¶ 46. Plaintiffs assert that although they pointed out the "obvious and impermissible conflict of interest[,]" proper action was never taken. *Id.* at ¶¶ 47-48. On June 6, 2025, DeForge stated that she would not recuse herself. *See id.* at ¶ 49.

The final hearing date was June 10, 2025, and the parties submitted post-hearing briefs in August 2025. *See id.* at ¶¶ 56-57. On June 17, 2025, Plaintiffs filed a motion to reconsider DeForge's failure to recuse. *See id.* at ¶ 50. Plaintiffs allege that despite multiple follow-ups, there has been no response. *See id.* at ¶ 53. According to the proposed amended complaint, NYSED[1] violated Plaintiffs' constitutional rights by failing to issue a SAPA-compliant determination on the disqualification motion and allowing "the disciplinary proceedings to continue under a biased presiding officer." *Id.* at ¶ 54. According to the proposed amended complaint, DeForge is responsible for drafting a report for an OPD hearing panel, which "will influence their ultimate decision on discipline." *Id.* at ¶ 58.

Also on June 17, 2025, Plaintiffs allege that they filed a motion to compel, which sought "to question OPD's expert witness and investigators about the process by which charges were drafted, vetted, and brought against Plaintiffs, particularly OPD's compliance with Education Law § 6510(1)(b)." *Id.* at ¶ 71. DeForge denied the motion. *See id.* at ¶ 72. According to Plaintiffs, DeForge's ruling stated "that documentary evidence 'could have been subpoenaed during the hearing[.]'" *Id.* at ¶ 73. Plaintiffs allege that through DeForge's actions, NYSED "has systematically prevented [them] from developing a record regarding whether OPD followed mandatory statutory procedures before bringing charges." *Id.* at ¶¶ 61, 68. They claim that when they objected to DeForge's attempts to obstruct their access to information on the investigative process, DeForge simply told them to "file a 78 at the end of the day." *Id.* at ¶ 69.

Plaintiffs allege that Defendants' actions have caused reputational harm and emotional distress. *See id.* at ¶¶ 76-77. Moreover, according to the proposed amended complaint, the

[1] NYSED is not a party to this matter. *See* Dkt. Nos. 1, 19-4.

ongoing proceedings "threaten . . . access to community birth services for Western New York families." *Id.* at ¶ 79.

As for the named Defendants, Plaintiffs allege that Defendant Rosa "has ultimate supervisory authority over all NYSED operations, including the handling of motions to disqualify and compliance with SAPA § 303." *Id.* at ¶ 91. They contend that Defendant Rosa "failed to ensure that any proper determination was made" and "fail[ed] to exercise supervisory authority[,]" which allowed DeForge to continue her biased oversight of the disciplinary proceedings. *Id.* The proposed amended complaint alleges that Defendant Spillane "has direct supervisory responsibility over the disciplinary proceedings and the investigation process that led to the charges against Plaintiffs[,]" and "[h]e knew or should have known that OPD had failed to comply with [the statutory] requirement to consult with professional board members before bringing charges." *Id.* at ¶ 92. Plaintiffs claim that Defendant Spillane was directly involved in the alleged constitutional violations by "allow[ing] the proceedings to continue and direct[ing] or permitt[ing] his subordinates to oppose Plaintiffs' attempts to develop a record on this issue." *Id.*

## III. DISCUSSION

### A. Legal Standards

#### *1. Subject Matter Jurisdiction*

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)); *see Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000). "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks

the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). A court may raise the issue of subject matter jurisdiction *sua sponte* at any time. *See Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 700.

***2. Motion to Dismiss***

If subject matter jurisdiction is present, a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the "legal sufficiency" of the pleader's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). Courts may consider the contents of the complaint, as well as documents integral to the complaint, attached to the complaint as an exhibit, or incorporated by reference into the complaint. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). Courts must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability" generally does not meet the pleading standard. *Id.* (quoting *Twombly*, 550 U.S. at 557).

### 3. *Motion to Amend*

Although a proposed amended complaint would "supersede[] the original complaint, it does not necessarily moot a pending motion to dismiss." *Crider v. McGrath*, No. 9:25-CV-629, 2026 WL 550006, *5 (N.D.N.Y. Feb. 27, 2026) (citing *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303 (2d Cir. 2020)). "Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'" *Gorman v. Covidien Sales, LLC*, No. 13-CV-6486, 2014 WL 7404071, *2 (S.D.N.Y. Dec. 31, 2014) (quoting FED. R. CIV. P. 15(a)(2)). Accordingly, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Leave to amend need not be granted if amendment would be futile, and "[w]hen assessing futility, the court employs a standard comparable to that utilized in assessing a motion to dismiss under Rule 12(b)(6)." *O'Brien v. City of Syracuse*, No. 5:22-CV-948, 2024 WL 4252052, *2 (N.D.N.Y. Sept. 20, 2024) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)). In other words, "when a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under [Rule] 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim[.]" *Milanese*, 244 F.3d at 110 (citation omitted).

"[W]hen faced with an amended complaint, [courts] may either deny a pending motion to dismiss as moot or consider the merits of the motion, analyzing the facts as alleged in the amended pleading." *Pettaway*, 955 F.3d at 303 (citations omitted). "In deciding which approach to take, courts consider the nature of the amendment and whether the defendants had adequate opportunity to respond to the proposed amended complaint." *Crider*, 2026 WL 550006, at *5

(citations omitted). "[B]ecause Defendants have responded to [Plaintiffs'] cross-motion and proposed amended complaint with substantive legal arguments, . . . the Court considers the motion to dismiss and subsequent briefing in light of the proposed amended complaint[.]" *Id.* (citations omitted).

### B. Consideration of New Arguments Raised in Defendants' Reply

The Court first acknowledges that Defendants raised new arguments after submitting their original motion to dismiss. *See* Dkt. No. 22. While the original motion focused primarily on *Younger* abstention, *see* Dkt. No. 13-1, Defendants' reply in support of its motion and in opposition to Plaintiffs' cross-motion discusses sovereign, quasi-judicial, and prosecutorial immunity, as well as failure to plausibly allege constitutional injury and Defendants' personal involvement, *see* Dkt. No. 22. On April 17, 2026, Plaintiffs filed a letter asking the Court to disregard those arguments or permit Plaintiffs to file a sur-reply. *See* Dkt. No. 23. The Court permitted a sur-reply, *see* Dkt. No. 24, which Plaintiffs filed, *see* Dkt. No. 25. That sur-reply reiterates Plaintiffs' challenges to the newly raised arguments. *See id.* at 2.

Courts generally refrain from considering arguments raised for the first time in a reply brief if it would deprive the opposing party of an opportunity to respond. *See United States v. Pepin*, 514 F.3d 193, 203 n.13 (2d Cir. 2008) (citing *In re Harris*, 464 F.3d 263, 268-69 n.3 (2d Cir. 2006)); *Sacchi v. Verizon Online LLC*, No. 14-CV-423, 2015 WL 1729796, *1 n.1 (S.D.N.Y. Apr. 14, 2015). However, if the opposing party is given an opportunity to respond—as was the case here—the Court may consider such arguments. *See Sacchi*, 2015 WL 1729796, at *1 n.1 (citing *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009), *aff'd*, 374 Fed. Appx. 71 (2d Cir. 2010) (summary order)); *Ruggiero v. Warner-Lambert*

*Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (stating that district courts have discretion to consider arguments newly raised in a reply brief).

Because Plaintiffs had the opportunity to respond via sur-reply, the Court will consider arguments raised in Defendants' reply papers. Moreover, the Court may consider jurisdictional issues *sua sponte*. *See Lyndonville Sav. Bank & Tr. Co.*, 211 F.3d at 700.

**C. Official-Capacity Claims**

Although Plaintiffs' sur-reply appears to state that the proposed amended complaint asserts only individual-capacity claims, *see* Dkt. No. 25 at 3, the proposed amended complaint specifically indicates that Defendants are sued in their individual and official capacities. *See* Dkt. No. 19-4 at ¶¶ 15-16. Thus, the Court construes the proposed amended pleading as asserting both individual-capacity and official-capacity claims.

"The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against a state or one of its agencies absent their consent to such a suit or an express statutory waiver of immunity." *Kilcher v. N.Y. State Police*, No. 1:19-CV-00157, 2019 WL 2511154, *3 (N.D.N.Y. June 18, 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100 (1984)). A state official sued in his or her official capacity is eligible for sovereign immunity under the Eleventh Amendment.[2] *See Walker v. Rosa*, No. 1:24-CV-1171, 2025 WL 1303880, *4 (N.D.N.Y. May 6, 2025), *R. & R. adopted*, 2025 WL 1527226 (N.D.N.Y. May 29, 2025); *N.Y. Citizens Audit Civic Fund, Inc. v. James*, No. 1:25-CV-1447, 2026 WL 2279569, *4 (N.D.N.Y. Aug. 7, 2026).

---

[2] Although there is an exception to sovereign immunity where a plaintiff seeks certain injunctive or declaratory relief, *see N.Y. Citizens Audit Civic Fund*, 2026 WL 2279569, at *5, Plaintiffs' proposed amended pleading eliminates their request for declaratory relief and seeks only money damages, *see* Dkt. No. 19-4 at 22-23.

Because the State of New York and its agencies have not waived sovereign immunity from § 1983 claims for money damages, Defendants are immune from suit in their official capacities on both claims in the proposed amended complaint. *See Walker*, 2025 WL 1527226, at *1; *N.Y. Citizens Audit Civic Fund*, 2026 WL 2279569, at *4. Plaintiffs' official-capacity claims against Defendants are therefore dismissed without prejudice for lack of jurisdiction. *See Walker*, 2025 WL 1303880, at *12; *N.Y. Citizens Audit Civic Fund*, 2026 WL 2279569, at *5, *13.

**D. Individual-Capacity Claims**

Defendants argue that Plaintiffs' individual-capacity claims must fail for numerous reasons, including *Younger* abstention, quasi-judicial and prosecutorial immunity, and failure to allege constitutional injury or Defendants' personal involvement. *See* Dkt. No. 13-1 at 7-12; Dkt. No. 22 at 5-10. Plaintiffs oppose those arguments. *See* Dkt. No. 19-1 at 6-11; Dkt. No. 25 at 3-7.

***1.*** **Younger** ***Abstention***

The *Younger* abstention doctrine "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings[,]" including state administrative proceedings. *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Younger v. Harris*, 401 U.S. 37, 43-44 (1971); *Ohio Civ. Rts. Comm'n v. Dayton Christian Schs. Inc.*, 477 U.S. 619, 627 (1986)). As is relevant here, the Supreme Court has stated that *Younger* abstention may apply to limited categories of matters, including "certain civil enforcement proceedings[.]" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (citation and internal quotation marks omitted); *see Pervu v. City of Oneonta*, No. 6:19-CV-861, 2020 WL 1643392, *4 (N.D.N.Y. Apr. 2, 2020). Courts in this Circuit have determined that state-initiated disciplinary proceedings for professional misconduct fall within that category and implicate *Younger* abstention. *See, e.g.*, *Peters v.*

*Neroni*, 598 Fed. Appx. 797, 798 (2d Cir. 2015) (summary order) ("State-initiated disciplinary proceedings against lawyers for violation of state ethics rules constitute 'civil enforcement proceedings' implicating *Younger*"); *Cameron v. Zucker*, No. 17-CV-3420, 2017 WL 2462692, *4 (S.D.N.Y. June 7, 2017) (recognizing a state-initiated disciplinary proceeding against a physician as a "civil enforcement proceeding" implicating *Younger*); *Mir v. Shah*, 569 Fed. Appx. 48, 50-51 (2d Cir. 2014) (summary order) (finding that state-initiated proceedings to revoke a physician's medical license were "civil enforcement proceedings" implicating *Younger*).

Plaintiffs' papers do not reference the Supreme Court's categorical approach set out in *Sprint*. Rather, they appear to rely on an older three-part test requiring abstention when: "(1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (citation omitted); *see* Dkt. No. 19-1 at 6-8; Dkt. No. 25 at 5-6. Post-*Sprint*, these questions are still relevant when evaluating the propriety of *Younger* abstention. *See Cameron*, 2017 WL 2462692, at *4; *Pervu*, 2020 WL 1643392, at *3-6.

The parties do not appear to dispute that OPD has not yet rendered a decision on the disciplinary proceedings. *See* Dkt. No. 19-4 at ¶ 2; Dkt. No. 13-1 at 5-6. Indeed, instead of arguing that the administrative proceedings are no longer ongoing, Plaintiffs argue that they "do not seek to enjoin or otherwise interfere with the OPD disciplinary proceeding." Dkt. No. 19-1 at 5. The parties also do not appear to dispute whether important state interests are implicated in the administrative proceedings. *See* Dkt. No. 13-1 at 7 (stating that the administrative proceedings "involve important State interests concerning professional licensing and misconduct"); Dkt. Nos. 19-1, 25 (not contesting that characterization). The Second Circuit has previously recognized

administrative proceedings on professional licensure and misconduct as implicating important state interests. *See Kirschner v. Klemons*, 225 F.3d 227, 234 (2d Cir. 2000); *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 75 (2d Cir. 2003).

The parties do dispute the availability, through state administrative proceedings, of an opportunity for judicial review of the federal constitutional claims. Defendants point out that Plaintiffs already challenged the disciplinary proceedings with an Article 78 petition and an appeal to the Third Department. *See* Dkt. No. 13-1 at 11. They emphasize that Plaintiffs can bring future challenges if they are aggrieved by the ultimate determination in the disciplinary proceedings. *See id.* Plaintiffs argue that an Article 78 proceeding would be inadequate because it would not provide the remedy they seek in federal court: monetary damages. *See* Dkt. No. 19-1 at 7; Dkt. No. 25 at 6. They stress that they do not seek to overturn the disciplinary process; they seek damages for completed constitutional violations alleged in the proposed amended complaint. *See* Dkt. No. 19-1 at 7.

Notwithstanding the parties' disagreement on the adequacy of an Article 78 proceeding, Plaintiffs rely on *Kirschner* for the proposition that *Younger* abstention does not apply to claims only for money damages under § 1983. *See id.* at 8. In *Kirschner*, the Second Circuit recognized that "it is less likely that unacceptable interference with the ongoing state proceeding" would occur when a party seeks money damages instead of injunctive or declaratory relief. *See Kirschner*, 225 F.3d at 238. The Second Circuit also stated that "a stay of the action pending resolution of the state proceeding may be appropriate[,]" rather than dismissing the action, when monetary damages are sought. *Id.* (citation omitted). Finally, the Second Circuit acknowledged the plaintiff's unlikelihood of receiving damages for constitutional violations in an Article 78

proceeding. *See id.* at 238-39. Defendants counterargue that Plaintiffs have no viable claim for money damages. *See* Dkt. No. 22 at 2.

The Second Circuit has reiterated post-*Sprint* that "abstaining from cases involving efforts only to obtain money damages is inappropriate." *Jones v. Cnty. of Westchester*, 678 Fed. Appx. 48, 50 (2d Cir. 2017) (summary order) (citing *Kirschner*, 225 F.3d at 238). Thus, the Court is not satisfied that *Younger* abstention is warranted here. Even if *Younger* undoubtedly applied, however, courts are not required to stay a federal action for monetary damages where the "claims for damages plainly fail." *Bukowski v. Spinner*, 709 Fed. Appx. 87, 88 (2d Cir. 2018) (summary order). Such is the case here, as Plaintiffs' proposed amended complaint fails to adequately allege each Defendant's personal involvement.[3]

### 2. *Allegations of Personal Involvement*

Turning to the merits of Plaintiffs' proposed amended complaint, Defendants argue that Plaintiffs fail to adequately allege the personal involvement of either Defendant. *See* Dkt. No. 22 at 7-8. Defendants contend that "there is no basis to plausibly infer that Defendants were involved in Plaintiffs' professional misconduct proceedings, let alone events allegedly resulting in a putative constitutional injury." *Id.* at 7. Plaintiffs argue that they satisfy the pleading standard

[3] The Court acknowledges Defendants' argument that they are immune under the doctrines of quasi-judicial and prosecutorial immunity. *See* Dkt. No. 22 at 8-10. However, the proposed amended complaint pleads minimal facts as to their roles in bringing the disciplinary charges or adjudicating the proceedings. *See* Dkt. No. 19-4 at ¶¶ 15-16, 91-92. Documents attached to the proposed amended complaint indicate that Plaintiffs' hearing panel has three members, *see id.* at 76, and Defendants are not among the three panelists listed on an attached administrative hearing transcript, *see id.* at 38. Thus, it is not clear to the Court that Defendants acted or are acting in a manner "functionally comparable to that of a judge[,]" *Clark v. Dominique*, 798 F. Supp. 2d 390, 399 (N.D.N.Y. 2011) (citation and internal quotation marks omitted), or in an advocative capacity, *see Johnson v. Cnty. of Suffolk*, 809 F. Supp. 3d 96, 102 (E.D.N.Y. 2025). Notably, the hearing officer and hearing panel members are not parties to this action. The Court does not find it appropriate to dismiss Plaintiffs' individual-capacity claims based on quasi-judicial or prosecutorial immunity at this juncture.

"by alleging that Defendants . . . exercised supervisory authority over the disciplinary process[,] . . . failed to ensure compliance with SAPA § 303[,] . . . and permitted the proceedings to continue under a biased decisionmaker." Dkt. No. 25 at 3.

To state a § 1983 claim, a "plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations, and supervisory officials may not be held liable merely because they held a position of authority." *Walker*, 2025 WL 1303880, at *6 (citation and internal quotation marks omitted). In other words, Plaintiffs "must directly plead . . . that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 612 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Plaintiffs can meet this standard by alleging concrete facts demonstrating Defendants' personal involvement. *See Walker*, 2025 WL 1303880, at *6. "[V]ague, conclusory allegations" are insufficient. *Id.* (citations omitted).

Defendants are each named in two paragraphs of the 126-paragraph proposed amended complaint. *See* Dkt. No. 19-4 at ¶¶ 15-16, 91-92. As described above, most of Plaintiffs' factual allegations discuss DeForge's conduct surrounding the disciplinary proceedings. *See* Dkt. No. 19-4. The proposed amended complaint identifies Defendant Rosa as "the Commissioner of Education of the State of New York" who "has ultimate supervisory authority over NYSED and its divisions, including OPD." *Id.* at ¶ 15. According to Plaintiffs:

> Despite being aware or should have been aware [sic] that a formal motion to disqualify had been filed and that SAPA required the agency to make a determination, Rosa failed to ensure that any proper determination was made. Her failure to exercise supervisory authority allowed DeForge to continue presiding over the proceedings for months while the motion remained undecided, directly causing ongoing constitutional harm to Plaintiffs.

*Id.* at ¶ 91. The proposed amended complaint identifies Defendant Spillane as Director of the OPD with "direct supervisory authority over disciplinary proceedings conducted by OPD." *Id.* at ¶ 16. Plaintiffs allege the following as to Defendant Spillane's personal involvement:

> He knew or should have known that OPD had failed to comply with Education Law § 6510(1)(b)'s requirement to consult with professional board members before bringing charges. Despite this knowledge, he allowed the proceedings to continue and directed or permitted his subordinates to oppose Plaintiffs' attempts to develop a record on this issue. Spillane's direct involvement in maintaining this unconstitutional process, including his oversight of the continued prosecution of charges that were not properly vetted, demonstrates deliberate indifference to Plaintiffs' constitutional rights.

*Id.* at ¶ 92.

Although the proposed amended complaint repeatedly references the supervisory authority of both Defendants, its factual allegations underlying Defendants' ties to the purported constitutional violations are sparse. For example, Plaintiffs allege in conclusory fashion that Rosa "failed to ensure" that others in NYSED followed SAPA, and that her failure precipitated violations of Plaintiffs' constitutional rights. *Id.* at ¶ 91. Similarly, Plaintiffs allege with minimal specificity that Spillane "allowed" improper proceedings to continue and "directed or permitted" others in NYSED to thwart Plaintiffs' attempts to develop a record at the hearing. *Id.* at ¶ 92.

Critically, the allegations against both Defendants rely heavily on their supervisory positions and lack reference to specific facts. *See* Dkt. No. 25 at 4 (arguing that Plaintiffs sufficiently plead personal involvement "by alleging that Defendants, in their supervisory roles, failed to ensure compliance with mandatory statutory procedures and allowed the proceedings to continue under a biased decisionmaker"). As courts in this Circuit have recognized, allegations of this generality cannot withstand a motion to dismiss. *See, e.g.*, *Walker*, 2025 WL 1303880, at *6-

7 (recommending dismissal of a § 1983 claim against Rosa based on conclusory allegations that the Commissioner of Education withheld the *pro se* plaintiff's nurse practitioner license); *Richey v. Sullivan*, No. 1:23-CV-344, 2025 WL 1836492, *17-18 (N.D.N.Y. July 3, 2025) (dismissing counseled § 1983 claims based on conclusory allegations that the Commissioner of New York's Office of Mental Health designated panel members, "created, oversaw, and implemented policies and procedures" that precipitated violations of the plaintiff's constitutional rights, and "failed to train, supervise, and discipline her staff"); *Mongielo v. Hochul*, No. 22-CV-116, 2023 WL 2307887, *19 (W.D.N.Y. Mar. 1, 2023) (dismissing counseled § 1983 claims against school superintendents based on conclusory allegations that they enforced a mask mandate during the COVID-19 pandemic).

Accordingly, the Court dismisses Plaintiffs' individual-capacity claims for failure to allege personal involvement as to either Defendant.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 13) is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' cross-motion for leave to file an amended complaint (Dkt. No. 19) is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' proposed amended complaint (Dkt. No. 19-4) is accepted for filing and **DISMISSED**;[4] and the Court further

[4] Plaintiffs' official-capacity claims are dismissed without prejudice for lack of jurisdiction due to sovereign immunity. Because it may be possible for Plaintiffs to properly allege Defendants'

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 31, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

personal involvement after the administrative proceedings have concluded, the Court also dismisses Plaintiffs' individual-capacity claims without prejudice.